**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **CLEO G.,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. EA-24-2834** |
| **COMMISSIONER OF SOCIAL** | * | |
| **SECURITY,** | | |
| | * | |
| **Defendant.** | | |
| | * | |

**MEMORANDUM OPINION**

On October 1, 2024, Plaintiff Cleo G. petitioned this Court to review the final decision of

the Social Security Administration ("SSA" or "Commissioner") denying her claim for benefits.

ECF No. 1. This case was referred to a United States Magistrate Judge with the parties'

consent.[1] 28 U.S.C. § 636; Local Rule 301.4 (D. Md. 2025). Pending before the Court is

Plaintiff's appeal, which is fully briefed. ECF Nos. 13, 15–16. No hearing is necessary. Local

Rule 105.6. This Court must uphold the decision of the SSA if it is supported by substantial

evidence and if the SSA employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3);

*Craig* v. *Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, and for the reasons set

forth below, the Commissioner's decision is reversed, and the case is remanded for further

proceedings consistent with this Opinion.

**I.     BACKGROUND**

**A.     Procedural History**

On August 16, 2021, Plaintiff filed an application for Disability Insurance Benefits under

Title II of the Social Security Act, 42 U.S.C. § 301 *et seq.*, alleging a disability onset date of

---

[1] This case was reassigned to the undersigned on July 8, 2025.

April 5, 2018.  ECF No. 8-4 at 2.[2]  Plaintiff claimed that she was disabled within the meaning of

the Social Security Act because she is unable to work due to "lumbar degenerative disc disease,

herniated discs, facet joint syndrome, lumbar stenosis with neurogenic claudication, lumbar

radiculopathy, cervical disc disease, plantar fasciitis, and obesity," as well as "major depressive

disorder and anxiety disorder."  ECF No. 13 at 6.

The SSA denied Plaintiff's application for benefits on March 3, 2022.  ECF No. 8-4 at 2.

On March 22, 2022, Plaintiff filed for reconsideration, and the SSA affirmed its initial

determination.  ECF No. 8-4 at 12; 8-5 at 12.  On December 2, 2022, Plaintiff requested a

hearing before an Administrative Law Judge (ALJ), which was held on August 23, 2023.  ECF

Nos. 8-3 at 42; 8-5 at 18.  The ALJ rendered a decision on December 28, 2023, denying

Plaintiff's claim.  ECF No. 8-3 at 15, 18–36.  On January 30, 2024, Plaintiff requested a review

of the ALJ's decision, and on August 2, 2024, the Appeals Council affirmed the ALJ's decision.

ECF No. 8-3 at 2, 5.  The ALJ's December 28, 2023 decision therefore constitutes the final,

reviewable decision of the SSA.  *Sims* v. *Apfel*, 530 U.S. 103, 106-107 (2000); 42 U.S.C.

§ 405(g); 20 C.F.R. § 422.210(a).

### B.    Statutory Framework

The Social Security Act authorizes disability insurance benefit payments to every insured

individual who "'is under a disability.'"  *Cleveland* v. *Policy Mgmt. Sys. Corp.*, 526 U.S. 795,

801 (1999) (quoting 42 U.S.C. § 423(a)(1)); *see also Shue* v. *O'Malley*, No. 23-1795, 2024 WL

2827936, at *3 (4th Cir. June 4, 2024).  The Act defines disability as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

---

[2] Page numbers refer to the pagination of the Court's Case Management/Electronic Case
Files system (CM/ECF) system printed at the top of the cited document.

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). Federal regulations require the ALJ to evaluate a claimant's disability claim using a five-step sequential evaluation process. 20 C.F.R. § 404.1520. Through this process, an ALJ evaluates, in order, "whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Hancock* v. *Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "The applicant bears the burden of production and proof during the first four steps of the inquiry." *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Mascio* v. *Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (internal quotation marks and citations omitted).

If the claimant does not carry their burden at the third step of the sequential evaluation, then the ALJ must assess relevant evidence and make a finding regarding the claimant's residual functional capacity. 20 C.F.R. § 404.1520(e); *Monroe* v. *Colvin*, 826 F.3d 176, 179 (4th Cir. 2016). Residual functional capacity is defined as "the most you can still do despite your [physical and mental] limitations." 20 C.F.R. § 404.1545. The residual functional capacity assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis[.]" *Mascio*, 780 F.3d at 636 (quoting Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims (SSR 96-8p), 61 Fed. Reg. 34,474, 34,475 (July 2, 1996)). "Only after such a function-by-function analysis may an ALJ express [residual functional capacity] 'in terms

of the exertional levels of work.'" *Monroe*, 826 F.3d at 187 (quoting *Mascio*, 780 F.3d at 636).

The ALJ then uses its residual functional capacity determination at the fourth and fifth steps of

the disability assessment. 20 C.F.R. § 404.1520(e); *Monroe*, 826 F.3d at 179.

C.    **The ALJ's Decision**

At step one of the five-step sequential disability evaluation, the ALJ reserved decision on

the issue of whether Plaintiff had engaged in substantial gainful activity because "[i]t is unclear

. . . when the claimant returned to work after the alleged [disability] onset date and whether

claimant's posted earnings in 2020 and 2021 [were] from actual work activity she performed in

those years." ECF No. 8-3 at 21. The ALJ found that "resolution of this issue [would] not alter

the outcome of the decision." *Id.* At step two, the ALJ found that Plaintiff suffered from the

severe impairments of "L5-S1 disc extrusion abutting the left S1 nerve root; obesity, with a body

mass index (BMI) in the mid-30's to low 40's; major depressive disorder [ ]; and anxiety." *Id.* at

22 (internal citation and emphasis omitted). The ALJ also determined that Plaintiff suffered

from the non-severe impairments of "mild cardiomegaly and mild mitral and tricuspid

regurgitation . . . [a] history of plantar fasciitis . . . and hidradenitis suppurativa." *Id.* At step

three, the ALJ determined that Plaintiff "does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments in 20

CFR Part 404, Subpart P, Appendix 1." *Id.* (emphasis omitted). Before continuing to the fourth

step, the ALJ determined that Plaintiff retained the residual functional capacity to:

> perform sedentary work . . . except the claimant can frequently climb ramps and
> stairs, stoop, kneel, and crouch; she can occasionally climb ladders, ropes, and
> scaffolds, balance, and crawl; she can perform simple, routine, repetitive tasks,
> not at a production-pace rate, meaning no assembly line type work, no hourly
> quotas, and the work is performed at a consisten[t] pace throughout the day; and
> she requires a cane to walk and balance, as needed.

*Id.* at 24 (emphasis omitted). At the fourth step, the ALJ determined that Plaintiff was not able

to perform past relevant work as a medical records technician, an emergency medical service

4

coordinator, or as a federal investigator. *Id*. at 34. Lastly, at the fifth step, the ALJ determined that because there are jobs that exist in the national economy that Plaintiff can perform, Plaintiff is not "under a disability" as defined in the Social Security Act, and the SSA properly denied her application for benefits. *Id*. at 34–35.

## II.    DISCUSSION

On appeal, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ erroneously: (1) evaluated medical opinions contained in Plaintiff's record; (2) evaluated Plaintiff's subjective statements; and (3) assessed Plaintiff's residual functional capacity. ECF No. 13 at 5. Defendant counters that the ALJ reasonably accounted for Plaintiff's limitations, provided a specific discussion allowing for meaningful review, and followed the regulatory framework as she considered the evidence of Plaintiff's capacity to perform a limited range of sedentary work. ECF No. 15 at 2.

### A.    Standard of Review

The scope of judicial review of the SSA's disability determination is "circumscribed." *Britt* v. *Saul*, 860 Fed. Appx. 256, 259 (4th Cir. 2021) (citing 42 U.S.C. § 405(g)). The Court must affirm the decision "so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence." *Id.*; *accord Mascio*, 780 F.3d at 634; *Coffman* v. *Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Factual findings supported by substantial evidence "shall be conclusive." 42 U.S.C. § 405(g); *see also Hays* v. *Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if [the] decision is supported by substantial evidence.").

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek* v. *Berryhill*, 587 U.S. 97, 102

(2019).  Under this standard of review, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* at 103 (quoting *Consolidated Edison Co.* v. *NLRB*, 305 U.S. 197, 229 (1938)); *see also Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) ("Substantial evidence . . . is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.").  It is "more than a mere scintilla . . . [and] somewhat less than a preponderance."  *Laws*, 368 F.2d at 642.  The "threshold for such evidentiary sufficiency is not high."  *Biestek*, 587 U.S. at 103.

In conducting the substantial evidence inquiry, this Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence.  *Sterling Smokeless Coal Co.* v. *Akers*, 131 F.3d 438, 439-440 (4th Cir. 1997).  Although an ALJ's decision must be sufficiently detailed to allow for meaningful judicial review, an "elaborate or even sophisticated" explanation is not required.  *Mascio*, 780 F.3d at 636-637; *T-Mobile S., LLC* v. *City of Roswell*, 574 U.S. 293, 302 (2015).  Rather, an administrative decision's reasoning need only be "reasonably discernible."  *Garland* v. *Ming Dai*, 593 U.S. 357, 369 (2021).  "Meaningful review is frustrated—and remand necessary—only where [the court is] unable to fathom the [ALJ's] rationale in relation to evidence in the record."  *Britt*, 860 Fed. Appx. at 262 (internal quotation marks and citation omitted).

### B.    Medical Opinions

An ALJ "must follow certain procedures when assessing the weight to which medical opinions are entitled" and "articulate . . . how persuasive [the ALJ] finds each medical opinion."  *Adrianna S.* v. *Commissioner, Soc. Sec. Admin.*, Civil Action No. SAG-20-3136, 2022 WL 112034, at *1 (D. Md. Jan. 12, 2022) (citing 20 C.F.R. §§ 404.1520c, 404.1520c(b)).  The implementing regulations identify a series of factors that the SSA must consider when assessing medical opinions.  20 C.F.R. § 404.1520c(c).  Among those factors, "[s]upportability and

consistency are the most important factors when considering the persuasiveness of medical opinions." *Id.*; *see also* 20 C.F.R. § 404.1520c(b)(2). "Strictly speaking, 'supportability' concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Carlos F.* v. *Kijakazi*, Civil Action No. BAH-22-2049, 2023 WL 3293086, at *3 (D. Md. May 5, 2023) (internal quotation marks and citation omitted); *see also Adrianna S.*, 2022 WL 112034, at *1 ("Supportability generally refers to 'the objective medical evidence and supporting explanations provided by a medical source.'") (quoting 20 C.F.R. § 404.1520c(c)(1)). "In assessing consistency, the ALJ looks to the degree of cohesion between the medical opinion and 'the evidence from other medical sources and nonmedical sources in the claim.'" *Andrew P.* v. *O'Malley*, Civil Action No. CDA-23-2443, 2024 WL 4288063, at *3 (D. Md. Sept. 25, 2024) (quoting *Adrianna S.*, 2022 WL 112034, at *1); *see also* 20 C.F.R. § 404.1520c(c)(2). The more consistent a medical opinion is with the other evidence, the more persuasive that medical opinion will be. 20 C.F.R. § 404.1520c(c)(2); *Adrianna S.*, 2022 WL 112034, at *1. "Supportability and consistency must be considered independently.'" *Antwoin W.* v. *Dudek*, Civil Action No. CDA-24-75, 2025 WL 949410, at *3 (D. Md. Mar. 28, 2025) (quoting *Carlos F.*, 2023 WL 3293086, at *3).

Remand is warranted when an ALJ fails to properly consider the supportability and consistency of a medical opinion. *E.g.*, *Lauren P.* v. *Dudek*, Civil Action No. SAG-24-0480, 2025 WL 754522, at *5 (D. Md. Mar. 10, 2025) (collecting cases). Accordingly, an ALJ must "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(b)(2). This explanation must include reference to specific evidence in the record. *Shelley C.* v. *Commissioner of Soc. Sec. Admin.*, 61 F.4th 341, 358 (4th Cir. 2023) (internal citations and quotations omitted). The Fourth Circuit has held that "where an ALJ fails to specify which specific objective evidence supports [the ALJ's]

conclusion, that analysis is incomplete and precludes meaningful review." *Id.*; *see also Stephen R.* v. *O'Malley*, No. 21-2292, 2024 WL 3508155, at *4 (4th Cir. 2024) (finding that the ALJ's decision was not supported by substantial evidence where the ALJ engaged in conclusory analysis of the supportability and consistency factors but did not "reference or describe" the supporting evidence). Additionally, when the record contains evidence that contradicts an ALJ's conclusion, the ALJ's failure to analyze such evidence and explain the basis for its rejection also precludes meaningful review. *E.g.*, *Selina M.* v. *Kijakazi*, Civil Action No. GLS-21-2943, 2023 WL 2034292, at *5 (D. Md. Feb. 16, 2023); *see also Stephen R.*, 2024 WL 3508155, at *4 ("[W]hen the ALJ's decision suggests that [they] selectively examined the record and ignored countervailing evidence or that [they] mischaracterized the facts to buttress [ ] conclusions, that decision is not supported by substantial evidence.") (internal citations omitted).

Here, Plaintiff argues that the ALJ failed to properly conduct the required supportability and consistency analyses of the 2018 and 2021 opinions of Sharon Malcolm, MD, and the 2018 opinion of Kimberly Seablom, PA-C.[3] ECF Nos. 13 at 18–27; 16 at 2–6. The Commissioner argues that the ALJ provided "extensive consideration and narrative discussion" and applied the proper legal framework in evaluating the persuasiveness of the medical opinion, "particularly with respect to supportability and consistency." ECF No. 15 at 5–6.

When assessing the supportability factor, the ALJ found Dr. Malcolm's 2018 opinion unpersuasive because it failed to address Plaintiff's condition over a 12-month period, referenced Plaintiff's ongoing treatment, and failed to describe Plaintiff's limitations with specificity. ECF No. 8-3 at 31. None of the ALJ's proffered reasons, however, meaningfully address the supportability factor. In particular, the ALJ did not assess how the objective medical testing

---

[3] "PA-C" is an abbreviation for physician assistant, certified. "Pac." Merriam-Webster.com Dictionary, Merriam-Webster, https://perma.cc/JZ97-L6ZL (last accessed September 29, 2025).

outlined in Dr. Malcolm's opinion, including Plaintiff's "recent MRI and CT scan" that show "disk herniation at L5 which pinches the S1 nerve," affected the persuasiveness of the opinion.[4] ECF No. 8-8 at 260.  This Court has previously found an ALJ's supportability analysis lacking when it did not "adequately articulate how the 'objective medical evidence and supporting explanations presented by'" the medical practitioner "affected the persuasiveness of [the medical] opinion."  *Joseph F.* v. *O'Malley*, Civil Action No. CDA-23-3095, 2024 WL 3924673, at *3 (D. Md. Aug. 23, 2024) (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also Lauren P.*, 2025 WL 754522, at *4 (remanding where the ALJ did not assess objective medical evidence, diagnostic techniques, data collection procedures/analysis, and other objective medical evidence); *Nastasia C.* v. *O'Malley*, Civil Action No. CDA-23-1638, 2024 WL 3904711, at *3 (D. Md. Aug. 22, 2024) (remanding where the ALJ made no observations on the objective medical evidence and therefore failed to address supportability).

Likewise, the ALJ did not adequately address the supportability of Dr. Malcolm's 2021 or PA-C Seablom's 2018 opinions.  PA-C Seablom's 2018 opinion noted, among other things, an abnormal range of motion upon physical examination; "localized tenderness or pain on palpitation of . . . the thoracolumbar spine"; "guarding or muscle spasm of the thoracolumbar spine"; weakened movement due to peripheral nerve injury; interference with sitting and standing; and that "the examination is medically consistent with [Plaintiff's] statements."  ECF

---

[4]  "MRI" is an abbreviation for magnetic resonance imaging, which is "a noninvasive diagnostic technique that produces computerized images of internal body tissues and is based on nuclear magnetic resonance of atoms within the body induced by the application of radio waves."  "MRI." Merriam-Webster.com Dictionary, Merriam-Webster, https://perma.cc/CJG8-F9ME (last accessed Sept. 29, 2025); "Magnetic resonance imaging." Merriam-Webster.com Dictionary, Merriam-Webster, https://perma.cc/XJ45-8QL5 (last accessed Sept. 29, 2025).  "CT scan" is an abbreviation for commuted tomography scan, which is "a cross-sectional, three-dimensional image of an internal body part produced . . . chiefly for diagnostic purposes."  "CT scan."  Merriam-Webster.com Dictionary, Merriam-Webster, https://perma.cc/LF34-D4MV (last accessed Sept. 29, 2025).

No. 8-9 at 315–316.  PA-C Seablom's opinion explicitly outlined diagnostic testing, including results of a recent MRI that documented arthritis and stated, "at L5-S1 there is left eccentric disk bulge and disc extrusion . . . [which] correlate[s] clinically with symptoms of S1 radiculopathy . . . moderate to severe left and moderate right neural foraminal stenosis." *Id.* at 320–321. Similarly, Dr. Malcolm's 2021 opinion noted, among other things, that Plaintiff has a "severe disabling back condition" diagnosed by an MRI and CT scan that show "[Plaintiff] has a bulging disk and a pinched nerve at the L4/L5 vertebrae." *Id.* at 104.  Dr. Malcolm also noted that Plaintiff cannot sit or stand for very long, has intermittent periods where she is unable to move her legs, and concluded that "restricting activity is the only way to prevent exacerbation of her chronic low back pain." *Id.* at 105.  In assessing these opinions, the ALJ provided no analysis of how any of the diagnostic data affected the supportability and therefore the persuasiveness of the medical opinions. *E.g., Brenda B.* v. *Kijakazi*, Civil Action No. BAH-22-2837, 2023 WL 5721609, at *3 (D. Md. Sept. 5, 2023) (remanding where the ALJ provided no analysis of how the data or supporting explanations utilized by the physician affected the persuasiveness of the opinion); *accord Charles H.* v. *Kijakazi*, Civil Action No. BAH-22-3331, 2023 WL 5984150, at *4 (D. Md. Sept. 14, 2023); *Carlos F.*, 2023 WL 3293086, at *4.

As in *Stephen R.*, where the ALJ's analysis was "threadbare and lacked citations," here, the ALJ's failure to cite to the record with any specificity renders this Court unable to meaningfully review the ALJ's consistency assessment.  2024 WL 3508155, at *4; *see also Oakes* v. *Kijakazi*, 70 F.4th 207, 217 (4th Cir. 2023).  Additionally, similar to *Selina M.*, none of the ALJ's consistency analyses of the three medical opinions acknowledge conflicting evidence in the record or adequately identify the evidence in the record to which the ALJ referred.  2023 WL 2034292, at *45 (D. Md. Feb. 16, 2023).  Remand is therefore required because the ALJ did not adequately analyze the supportability and consistency of the medical opinions.

C.    **Subjective Statements**

When evaluating a claimant's subjective symptoms, an ALJ is required to use the two-step framework set forth in 20 C.F.R. § 404.1529 and Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims (SSR 16-3p), 2016 WL 1119029 (SSA Mar. 16, 2016). *Arakas* v. *Commissioner, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020). Under this framework, the ALJ must first "determine whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." *Id*. (quoting 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3). Second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *4; *see also Arakas*, 983 F.3d at 95; 20 C.F.R. § 404.1529(c). Importantly, "[a]t this step, objective evidence is *not* required to find the claimant disabled." *Arakas*, 983 F.3d at 95 (emphasis in original).

Consideration of the intensity, persistence, and limiting effects of the symptoms requires the ALJ to examine the entire case record, including the objective medical evidence; the claimant's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the case record. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4-7. The ALJ may also consider factors such as daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; and treatment, other than medication, received for relief of pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *7. A claimant is "entitled to rely exclusively on subjective evidence" to prove the severity and extent of their

symptoms. *Arakas*, 983 F.3d at 96 (quoting *Hines* v. *Barnhart*, 453 F.3d 559, 563, 565 (4th Cir. 2006)). Thus, an ALJ commits "reversible error by improperly increasing Plaintiff's burden of proof by 'effectively requiring' her subjective symptoms to be 'supported by objective evidence.'" *Christina W.* v. *O'Malley*, Civil Action No. CDA-23-1325, 2024 WL 3819343, at *4 (D. Md. Aug. 14, 2024) (quoting *Arakas*, 983 F.3d at 96); *see also Stoker* v. *Saul*, 833 Fed. Appx. 383, 386 (4th Cir. 2020) (per curiam) (finding that "the ALJ's determination that [the claimant's] assertions about the severity and limiting effects of his pain were less credible merely because no objective medical evidence supported them, was improper").

When assessing daily activities, an "ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which [the claimant] can perform them." *Oakes*, 70 F.4th at 216 (emphasis in original) (quoting *Woods* v. *Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). As the Fourth Circuit has emphasized, "[d]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Lewis* v. *Berryhill*, 858 F.3d 858, 868 n.3 (4th Cir. 2017) (internal quotation marks and citation omitted). "Being able to live independently and participate in the everyday activities of life empowers people with disabilities and promotes their equal dignity." *Arakas*, 983 F.3d at 101.

Here, Plaintiff argues that the ALJ provided inadequate explanation for rejecting Plaintiff's subjective statements regarding her symptoms; failed to support her conclusion with record citations; made findings contradicted by evidence in the record; and impermissibly relied on Plaintiff's ability to engage in certain activities without explaining how that correlated to Plaintiff's ability to work. ECF No. 13 at 29–35. The Commissioner contends that the ALJ properly employed the two-step analysis of subjective complaints. ECF No. 14 at 13–19.

At the first step of the analysis, the ALJ determined that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. ECF

No. 8-3 at 25.  The ALJ erred, however, at the second step in the process in concluding that the

Plaintiff's "statements concerning the intensity, persistence and limiting effects of these

symptoms [were] not entirely consistent with the medical evidence and other evidence in the

record."  *Id*.  The ALJ did not "build an accurate and logical bridge" between the evidence and

this conclusion.  *Stoker*, 833 Fed. Appx. at 386 (quoting *Brown* v. *Commissioner Soc. Sec.

Admin.*, 873 F.3d 251, 269 (4th Cir. 2017)); *accord Willis F.* v. *Kijakazi*, Civil Action No. AAQ-

23-318, 2023 WL 8437229, at *23 (D. Md. Dec. 5, 2023); *Towanna G.* v. *Kijakazi*, Civil Action

No. BAH-21-1711, 2022 WL 4017417, at *4 (D. Md. Sept. 2, 2022).  The ALJ further erred by

relying on selective evidence regarding Plaintiff's activities of daily living and disregarding,

without explanation, Plaintiff's repeated reports of worsening pain.  *E.g.*, *Willis F.*, 2023 WL

8437229, at *3; *Lisa C.* v. *Saul*, Civil Action No. GLS 20-1179, 2021 WL 3040019, at *4 (D.

Md. July 16, 2021).

     In *Willis F.*, the Court found that the ALJ's opinion did not provide a bridge between the

evidence and the ALJ's conclusion because the ALJ did not explain how the objective medical

evidence "either undermine[d] or [was] entitled to more weight than Plaintiff's continued reports

of pain."   2023 WL 8437229, at *3; *accord Candace W.* v. *Dudek*, Civil Action No. ADC-24-

2124, 2025 WL 885998, at *4 (D. Md. Mar. 21, 2025); *Kevin T.* v. *O'Malley*, Civil Action No.

CDA-23-312, 2023 WL 8993664, at *4 (D. Md. Dec. 28, 2023); *Towanna G.*, 2022 WL

4017417, at *4.  Similarly, the ALJ's opinion in this case lacks "an accurate and logical bridge."

The ALJ noted that Plaintiff "described having difficulty focusing because of her pain,"

"testified that her depression and pain affect her," and "explained that she constantly manages

her pain throughout the day."  ECF No. 8-3 at 25.  The ALJ concluded that Plaintiff's

"statements concerning the intensity, persistence and limiting effects of these symptoms [were]

not entirely consistent with the medical evidence and other evidence in the record."  *Id*.  Yet, the

record reflects, and the ALJ noted, that Plaintiff continuously reported a high pain level,

worsening of her depression and back pain since January 2022, and a "very emotional" and

"tearful affect" in at least two of her examinations due to her pain.  ECF No. 8-3 at 25, 29.  As in

*Willis F.* and other cited cases, here, the ALJ provided no explanation of why Plaintiff's repeated

reports of pain were entitled to less weight than other evidence in the record.  Nor did the ALJ

cite to specific medical evidence that contradicts Plaintiff's allegations of pain.  Furthermore, as

in *Arakas,* the ALJ improperly increased the Plaintiff's burden of proof by requiring her to show

evidence of muscular atrophy to legitimize her allegations of pain.[5]  ECF No. 8-3 at 28

(concluding that "exam findings do not substantiate the extent of her alleged pain and alleged

limitations, as she has no evidence of muscle wasting or atrophy"); 983 F.3d at 96.

      Finally, the ALJ erroneously concluded that Plaintiff's allegations of pain were

undermined by evidence regarding her daily activities without considering the extent to which

the Plaintiff participated in these activities.  *Oakes*, 70 F.4th at 216; *Willis F.*, 2023 WL 8437229,

at *4.  The ALJ improperly concluded that "[r]ecords do not support that [Plaintiff] has

markedly limited activities of daily living over a twelve-month period" because her therapist

stated that Plaintiff "functions better at home caring for her children[] than she does in the

workplace."  ECF No. 8-3 at 33.  The ALJ's observation that Plaintiff participates in "some

childcare" of school-aged children without analyzing the extent of that participation has little

bearing on Plaintiff's "ability to do sustained work-related activities on a regular and continuing

basis—*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule."[6]  *Arakas*, 983

---

    [5]  Notably, the record does show evidence of muscular atrophy.  ECF No. 8-11 at 13, 194
(MRI results noting "[m]ild paraspinal musculature fatty atrophy of the lower lumbar spine" on
August 30, 2023, and September 4, 2023).

    [6]  Plaintiff's children were approximately seven, ten, and sixteen years old when the
therapist's letter was written in 2021.  ECF Nos. 8-9 at 460; 8-10 at 327.

F.3d at 100; *see also Willis F*., 2023 WL 8437229, at *4 (collecting cases). For all of these reasons, the ALJ employed an improper legal standard in evaluating the Plaintiff's subjective statements and the decision must be reversed.

### D.    Residual Functional Capacity

Finally, Plaintiff argues that substantial evidence does not support the ALJ's residual functional capacity finding. ECF No. 13 at 27–29. "When an individual is not engaging in substantial gainful activity and a determination [regarding eligibility for benefits] . . . cannot be made on the basis of medical factors alone . . . the sequential evaluation process generally must continue with an identification of the individual's functional limitations . . . and an assessment of his or her remaining capacities for work-related activities." SSR 96-8p, at 61 Fed. Reg. 34,475. The latter part of this analysis is expressed as a claimant's residual functional capacity, which is the most the claimant can do in a work setting on a regular and continuing basis despite any impairments or related symptoms. 20 C.F.R. § 404.1545; SSR 96-8p, at 61 Fed. Reg. 34,475; *see also* I.B, *supra*.

A claimant's residual functional capacity is determined using a two-step process. The ALJ must first "identify the individual's functional limitations . . . and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, at 61 Fed. Reg. 34,475. "The function-by-function approach asks the ALJ to consider a claimant's specific 'exertional and nonexertional functions.'"[7] *Ladda* v. *Berryhill*, 749 Fed. Appx. 166, 173 (4th Cir. 2018) (quoting SSR 96-8p). The ALJ then expresses a claimant's residual functional capacity "in

---

[7] "Exertional capacity . . . defines the individual's remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling." Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed. Reg. 34,474-01, 34,477 (July 2, 1996). "Nonexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength," such as stooping, climbing, reaching, seeing, hearing, speaking, understanding and remembering instructions, and tolerance of temperature extremes. *Id.*

terms of the exertional levels of work," such as "sedentary, light, medium, heavy, and very heavy."  SSR 96-8p, 61 Fed. Reg. at 34,475; *see also* 20 C.F.R. § 404.1567 (defining the physical exertion requirements of each exertional level of work); 20 C.F.R. § 416.967 (same).

While the SSA guidelines require a "function-by-function" analysis to determine a claimant's residual functional capacity, the Fourth Circuit has held that this analysis does not need to be explicit.  *Mascio*, 780 F.3d at 636 (rejecting "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis").  Instead, the key consideration is whether the ALJ identified the evidence relied upon in determining the claimant's residual functional capacity and built "an accurate and logical bridge from the evidence to that conclusion."  *Monroe*, 826 F.3d at 189 (internal quotation marks and citation omitted).  A proper residual functional capacity analysis "has three components: (1) evidence, (2) logical explanation, and (3) conclusion."  *Thomas* v. *Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019), *as amended* (Feb. 22, 2019).  The second component of this analysis, "the ALJ's logical explanation, is just as important as the other two."  *Id.*; *see also* SSR 96-8p, 61 Fed. Reg. at 34,478 ("The [residual functional capacity] assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence.").  Remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record," *Mascio*, 780 F.3d at 636 (internal quotation marks and citation omitted), or where the ALJ's residual functional capacity analysis "contains too little logical explanation for . . . meaningful appellate review."  *Thomas*, 916 F.3d at 312.

Here, the ALJ determined in the residual functional capacity assessment that Plaintiff could perform sedentary work with the use of a cane as needed.[8]  ECF No. 8-3 at 24; *see also* I.C., *supra*.  The ALJ listed several exceptions to Plaintiff's capacity for sedentary work, finding that Plaintiff "can frequently climb ramps and stairs, stoop, kneel, and crouch; she can occasionally climb ladders, ropes, and scaffolds, balance, and crawl; she can perform simple, routine, repetitive tasks, not at a production-pace rate, meaning no assembly line type work, no hourly quotas, and the work is performed at a consistence pace throughout the day."  ECF No. 8-3 at 24.  To reach this finding, the ALJ assessed Plaintiff's symptoms, as well as medical opinions and prior administrative medical findings.  *Id.* (citing 20 C.F.R. 404.1520c).  The ALJ discussed Plaintiff's testimony and reports, medical opinions, and medical records.  ECF No. 8-3 at 22–34.  The ALJ did not, however, reference the residual functional capacity regulations or the relevant Social Security Ruling or provide an assessment of the seven strength demands of exertional capacity in relation to each of Plaintiff's work functions.  *Id.*  Additionally, the ALJ did not identify the evidence she relied upon in deciding the exceptions to the sedentary work determination.  For example, it is unclear why the ALJ concluded that the Plaintiff "requires a cane to balance" but can "occasionally climb ladders, ropes, and scaffolds" and can "balance and crawl."  *Id.* at 28–29.  Because the ALJ failed to explain the rationale for the exceptions to the residual functional capacity determination, the lack of logical explanation precludes meaningful review.  *Thomas*, 916 F.3d at 312; *see also Elijah H.* v. *O'Malley*, Civil Action No. SAG-23-1786, 2024 WL 1833608, at *4 (D. Md. Apr. 26, 2024) (finding a lack of explanation constitutes

---

[8] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

reversible error); *Christina W.*, Civil Action No. CDA-23-1325, 2024 WL 3819343, at *5 (same).

Lastly, as the Fourth Circuit has made clear, a claimant's symptoms are relevant to the residual functional capacity analysis, but the "[residual functional capacity] assessment is a separate and distinct inquiry from a symptom evaluation, and the ALJ erred by treating them as one and the same." *Dowling* v. *Commissioner of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021); *accord Marie Evelyn B.* v. *Kijakazi*, Civil Action No. GLS-22-1240, 2023 WL 4600520, at *5 (D. Md. July 17, 2023) (remanding because the ALJ's analysis focused on the "persistence and intensity of the Plaintiff's alleged symptoms" rather than the residual functional capacity function-by-function assessment); *Nicole C.* v. *Kijakazi*, Civil Action No. JMC-22-2123, 2023 WL 4027481, at *4 (D. Md. June 15, 2023); *Theodore F.* v. *Kijakazi*, Civil Action No. ADC-22-1658, 2023 WL 2837585, at *8 (D. Md. Apr. 7, 2023). Because the ALJ did not employ the appropriate legal framework and engage in the required function-by-function analysis, the ALJ's decision is not supported by substantial evidence.

## III.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this Opinion pursuant to sentence four of 42 U.S.C. § 405(g). In remanding for further explanation and analysis, the Court offers no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct. A separate Order follows.


Date:  September 29, 2025                         _____/s/_____
                                                 Erin Aslan
                                                 United States Magistrate Judge